1
2
3
4
5
6           UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
7                    AT TACOMA

GARY RAY JONES,
8
                    Plaintiff,           Case No. C16-5911-RSM
9
          v.                             **ORDER ON SOCIAL SECURITY
10                                        DISABILITY**
    NANCY A. BERRYHILL, Acting
11  Commissioner of Social Security,[1]

12                   Defendant.

13        Plaintiff, Gary Ray Jones, brings this action pursuant to 42 U.S.C. §§ 405(g), and

14  1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security

15  denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security

16  Income (SSI) under Title II and Title XVI of the Social Security Act.  Dkt. 3.  This matter has

17  been fully briefed and, after reviewing the record in its entirety, the Court **REVERSES**     the

18  Commissioner's final decision and **REMANDS** this case for further administrative proceedings

19  under sentence four of 42 U.S.C. § 405(g).

20                    I.      **BACKGROUND**

21        In August 2009, Mr. Jones filed applications for DIB and SSI alleging disability

22  ─────────────────────
    [1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration.  Pursuant to Federal
23  Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit.
    The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

commencing on February 28, 2008. Tr. 14. The applications were denied initially and upon reconsideration. *Id.* On October 14, 2011, a hearing was held before Administrative Law Judge (ALJ) Joanne Dantonio. *Id.* ALJ Dantonio issued a decision finding Mr. Jones not disabled. *Id.* The Appeals Council granted review. By order dated June 12, 2013, the Appeals Council vacated the decision and remanded the case for the ALJ to further consider evidence related to Mr. Jones' alleged right shoulder impairment and obtain additional evidence from a vocational expert. Tr. 176-177. On March 10, 2014, a second hearing was held before ALJ Dantonio. Tr. 14. Mr. Jones was represented by counsel, Charles W. Talbot. *Id.* Joseph A. Moisan, a vocational expert (VE), also testified at the hearing. *Id.* ALJ Dantonio issued a decision on February 21, 2015, again denying Mr. Jones' claims. Tr. 14-40. The Appeals Council denied review, and the ALJ's decision became final.[2] Tr. 1-7. Mr. Jones then timely filed this judicial action.

## II.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

---

[2] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Mr. Jones bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or is expected to last, for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A

claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  *Tackett*, at 1098-99.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be "disabled" or "not disabled" at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  *Id.*; 20 C.F.R. §§ 404.1520, 416.920.  Step one asks whether the claimant is presently engaged in "substantial gainful activity" (SGA).  20 C.F.R. §§ 404.1520(b), 416.920(b). [3]  If he is, disability benefits are denied.  *Id.*  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does not have such impairments, he is not disabled.  *Id.*  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

---

[3] Substantial gainful employment is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R § 404.1572.

residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the claimant is able to perform other work, then he is not disabled; if the opposite is true, he is disabled and benefits may be awarded. *Id.*

## V.    THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[4] the ALJ found:

**Step one:**  Mr. Jones has not engaged in substantial gainful activity since February 28, 2008, the alleged onset date.

**Step two:**  Mr. Jones has the following severe impairments: malingering; polysubstance abuse; narcotic and benzodiazepine seeking behavior; tobacco addiction; chronic hamstring rupture; cervical degenerative disc disease; thoracic disc bulge; chronic obstructive pulmonary disease (COPD) with emphysema; peripheral polyneuropathy; bilateral ulnar nerve neuropathy; and right knee osteoarthritis, status post total right knee arthroplasty.

**Step three:**  These impairments do not meet or equal the requirements of a listed impairment.[5]

**Residual Functional Capacity:**  Mr. Jones can perform medium work. He can lift and/or carry 50 pounds occasionally and 25 pounds frequently in an eight-hour workday. He can stand and/or walk for six hours and sit for six hours in an eight-hour workday. He can occasionally climb ladders, ropes or scaffolds. He can occasionally crawl.

**Step four:**  Mr. Jones can perform past relevant work as a dump truck driver and, as such, is not disabled.

---

[4] 20 C.F.R. §§ 404.1520, 416.920.
[5] 20 C.F.R. Part 404, Subpart P. Appendix 1.

Tr. 14-40.

## VI.   ISSUES ON APPEAL

Mr. Jones argues the ALJ erred in: (1) failing to follow the directive of the Appeals Council on remand; (2) accepting a diagnosis of malingering from a treatment provider who is not an acceptable source; (3) evaluating the lay witness statements; (4) failing to discuss relevant medical records related to his COPD; (5) failing to properly evaluate his stroke as a severe impairment at step two; (6) evaluating the medical opinions of treating and examining doctors.  Dkt. 10 at 1-2.  As relief, Mr. Jones contends this matter should be reversed and remanded for a new hearing.  *Id.*  As discussed below, the Court   **REVERSES**        the Commissioner's final decision and **REMANDS** this case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## VII.   DISCUSSION

### A.   Medical Opinion Evidence

Mr. Jones contends the ALJ erred in discounting the opinions of treating and examining physicians Janitzia Scurch, M.D., and Lynn L. Staker, M.D.  Dkt. 10.  The ALJ must provide "clear and convincing reasons" to reject the uncontradicted opinion of a treating or examining doctor.  *Lester v. Chater*, 81 F.3d 821, 830, 831 (9th Cir. 1996).  When contradicted, a treating or examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record.  *Id.*

#### 1.   Dr. Schurch

In May 2009, Dr. Schurch completed a Department of Social and Health Services (DSHS) physical evaluation of Mr. Jones.  Tr. 614-620.  Dr. Schurch indicated she had treated Mr. Jones previously but had not seen him in over a year.  Tr. 618.  Dr. Schurch opined that Mr.

Jones was "severely limited" in his ability to perform work activity meaning he was "unable to lift at least 2 pounds or unable to stand and/or walk." Tr. 616. Dr. Schurch also opined Mr. Jones had marked limitations in the areas of sitting, standing, walking, lifting/carrying, and handling. *Id.* She further found he had restricted mobility, agility, or flexibility with balancing, bending, climbing, crouching, handling, kneeling, pushing/pulling, reaching, sitting and stooping. *Id.*

The ALJ discounted Dr. Schurch's opinion in part as based largely on Mr. Jones' subjective reports and diagnoses, which are not credible, and as inconsistent with her physical examination findings. Tr. 36. These were valid reasons to reject Dr. Schurch's opinion and they are supported by substantial evidence. An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). An ALJ may discount a doctor's opinions where the doctor's opinions are not supported by his own medical records or his own clinical findings. *See e.g., id.*; *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). An ALJ also need not accept a medical opinion that is brief, conclusory and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Here, Dr. Schurch's report indicates that Mr. Jones reported his chief complaint to be "arthritis in my body and I cannot move." Tr. 614. Dr. Schurch noted that Mr. Jones could not pick any body part that was worse than the others and that he complained the pain was "all over." *Id.* Dr. Schurch then attributed her findings on the DSHS form of various marked and severe limitations to "arthritis (multiple sites)." Tr. 615. However, Dr. Schurch's May 2009 examination notes do not reflect a diagnosis of arthritis in any part of Mr. Jones' body. Tr. 618-620. Moreover, she indicates the only imaging she reviewed in evaluating Mr. Jones were x-rays

from a recent ER visit which she indicates were normal. Tr. 618. Dr. Schurch's prior treatment records, from early to mid-2008 indicate Mr. Jones was seen for complaints of pain from acute injuries allegedly caused by falling off a ladder onto his side as well as after being hit in the head sliding into second base during a baseball game. Tr. 816-863. However, the only indication of arthritis in these prior records is an x-ray report finding osteoarthritis in the right knee. Tr. 837. This is consistent with the ALJ's finding arthritis of the right knee only to be a severe impairment. Tr. 18. Dr. Schurch's treatment notes do not indicate a diagnosis of arthritis as to any other parts of Mr. Jones' body.

Moreover, while Dr. Schurch indicates in the "assessment" portion of her May 2009 examination notes that Mr. Jones had limited range of motion in the right knee, shoulder and lumbar back, the only range of motion deficit noted in the physical examination findings is reduced left knee extension and flexion. Tr. 618-620. Dr. Schurch does not identify the extent to which Mr. Jones' range of motion is limited in his knee, lumbar back or shoulder, nor do her notes reflect whether she actually performed range of motion testing on Mr. Jones' lumbar back or shoulder. *Id.* Dr. Schurch also notes swelling on the posterior aspect of Mr. Jones' right thigh which she attributes to a reported old hamstring injury. *Id.* However, Dr. Schurch's opinion does not attribute any of Mr. Jones' limitations to a hamstring injury but only to "arthritis." Tr. 615. The only other examination findings Dr. Schurch notes are some elbow joint swelling and "tenderness" in various areas including epicondyle, biceps tendons subacromial, subdeltoid bursa, patellar and lateral collateral ligament. Tr. 619. However, despite these findings, Dr. Schurch noted that Mr. Jones's gait, station and posture were grossly normal. Tr. 619. Without further explanation, the ALJ reasonably concluded that the rather minimal objective findings were inconsistent with or inadequate to support the extreme level of limitation Dr. Schurch

assessed in her opinion, namely that, due to arthritis, Mr. Jones was "unable to lift at least 2 pounds or unable to stand and/or walk." Tr. 616. The ALJ also reasonably concluded that in reaching her opinions Dr. Schurch relied to a large extent on Mr. Jones' subjective complaints (which were properly discounted as incredible) of extreme pain all over his body and inability to move due to arthritis.

In sum, the ALJ properly discounted Dr. Schurch's opinions.

### 2. Dr. Staker

In June 2014, Dr. Staker examined Mr. Jones and completed a DSHS physical functional evaluation. Tr. 2752-2757. Dr. Staker opined that Mr. Jones' degenerative arthritis of the right knee, probable degenerative arthritis of the left knee, severe right hamstring disruption, and numbness in his hands and arms caused moderate limitations i.e. significant interference with the ability to perform one or more basic work-related activities. *Id.* Dr. Staker opined that Mr. Jones' status post-operative cervical discectomy caused marked limitations, i.e. very significant interference with the ability to perform one or more basic work-related activities. *Id.* Overall Dr. Staker opined that Mr. Jones was "severely limited" meaning he was unable to meet the demands even of sedentary work. *Id.*

The ALJ discounted Dr. Staker's opinion as based to a large extent upon Mr. Jones' self-reports which were properly discounted as not credible. Tr. 38. The ALJ also notes that Dr. Staker "failed to review Mr. Jones' medical records, which would have definitely shown his pattern of making up injuries and exaggerating his symptoms for secondary gain." *Id.* If a treating provider's opinions are based "to a large extent" on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion. *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008); *see also*

*Bayliss,* 427 F.3d at 1217.  However, an ALJ does not provide sufficient reasons for rejecting an examining physician's opinion "by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."  *Ryan v. Comm'r of Social Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008); *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) ("In sum, the ALJ appears to have relied on her doubts about [the claimant's] overall credibility to reject the entirety of [the examining psychologist's] report, including portions that [the psychologist] deemed to be reliable.").

The ALJ reasonably discounted Dr. Staker's opinion that numbness in Mr. Jones' hands and arms caused moderate limitations as based to a large extent on Mr. Jones' self-reports.  Dr. Staker's report indicates that the cause of Mr. Jones' complaints of numbness is unknown. Moreover, Dr. Staker did not perform EMG or nerve conduction studies nor is there any indication that he performed sensory testing or noted numbness on examination.  Furthermore, Dr. Staker specifically lists in the diagnosis section of his opinion "*complaint* of numbness and weakness in the upper extremities."  Tr. 2757.  Accordingly, the record supports the ALJ's finding that this portion of Dr. Staker's opinions was based to a large extent on Mr. Jones' self-reports, which the ALJ properly discounted as not credible.  However, substantial evidence does not support this rationale with respect to Dr. Staker's other opinions related to Mr. Jones' knees, hamstring, and cervical spine.  Dr. Staker performed range of motion testing and recorded significant deficits in the cervical spine and shoulder, and more moderate deficits in the lumbar spine and knees.  Tr. 2752-2757.  He further noted that Mr. Jones had pain with sciatic stretch tests on the left and right at 70 degrees in the low back and "what appears to be a significant hamstring injury with atrophy proximally[.]"  *Id.*  Dr. Staker did not discredit Mr. Jones'

complaints himself and the ALJ offered no basis for his conclusion that these opinions were based more heavily on Mr. Jones' self-reports. Accordingly, substantial evidence does not support such a conclusion. Moreover, in light of the objective clinical findings contained in Dr. Staker's opinion, the fact that he did not review Mr. Jones' prior records reflecting evidence of symptom exaggeration related to drug-seeking behavior, is not a sufficient reason on its own to discount these opinions.

The ALJ also discounted Dr. Staker's opinion as inconsistent with Mr. Jones' demonstrated activities which show a high level of physical functioning. Tr. 38. However, the activities the ALJ cites were not performed contemporaneously with Dr. Staker's examination but were performed at least a year to several years prior to his opinion. Tr. 34, 491, 496, 503, 531, 561, 782, 793, 830, 860, 874, 976, 1021, 1101, 1280, 1571, 1593, 1596, 1601, 1604, 2356, 2389, 2044, 2554. These activities also occurred prior to Mr. Jones' cervical spine surgery which he underwent in October 2013, due to severe central canal stenosis and myelopathy at C3-C4, and this is the area Dr. Staker identifies as causing the most significant limitation. Tr. 1838. Accordingly, substantial evidence also does not support this reason for discounting these opinions.

In sum, the ALJ erred in discounting Dr. Staker's opinions to the extent provided above. This error was harmful as Dr. Staker assessed limitations in excess of those included by the ALJ in the RFC. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (an error is harmless if it is inconsequential to the ultimate nondisability determination). On remand, the ALJ should reevaluate Dr. Staker's opinions as provided above.

**B.     Appeals Council Remand Order**

Mr. Jones contends the ALJ erred in failing to follow the directive of the Appeals Council

on remand. Dkt. 10 at 1. The Appeals Council order provides:

> The record shows that the claimant has a right shoulder sprain and strain. He has no range of motion in the shoulder. He cannot raise his hands over his head. In addition, claimant has had several shoulder surgeries to correct the injury, but efforts were unsuccessful. He has a lot of popping and cracking in the shoulder, and when it happens, the shoulder pain becomes unbearable [...] The decision made no mention of this shoulder impairment which provides a significant limitation in the use of the right arm, and presumably would preclude the claimant's past relevant work as a dump truck driver and a tractor-trailer driver. Therefore, a reevaluation of the residual functional capacity is necessary.

Tr. 176. Mr. Jones argues the Appeals Council definitively found he had a severe right shoulder condition that precluded work at the medium exertional level, including his past relevant work, and the ALJ failed to comply with the Appeals Council order in failing to adopt those findings. Dkt. 10 at 5. However, whether an ALJ complies with an Appeals Council remand order is an internal agency matter which arises before the issuance of the agency's final decision. Section 405(g) does not provide this Court with authority to review intermediate agency decisions that occur during the administrative review process. *See* 42 U.S.C. § 405(g). As the Court stated in *Butler v. Astrue*:

> To the extent [the plaintiff] contends that the ALJ did not comply with the Appeal Council's remand order, "federal courts only have jurisdiction to review the final decisions of administrative agencies. When the Appeals Council denied review of the ALJ's second decision, it made that decision final and declined to find that the ALJ had not complied with its remand instructions."

2010 WL 342633 at *3 n.1 (C.D. Cal. Jan. 29, 2010) (quoting *Tyler v. Astrue*, 305 Fed. Appx. 331, 332 (9th Cir. 2008)).

To the extent Mr. Jones argues the ALJ misevaluated the evidence related to his right shoulder impairment cited by the Appeals Council as the basis for remand, this argument also fails. The ALJ reasonably rejected the October 2002 opinion of Daniel Brusek, D.O. that Mr. Jones had a significant disability regarding his right upper extremity rendering him unable to

return to his previous work as a dump truck driver. The ALJ rejected this opinion on the grounds that it was significantly remote and did not address the claimant's functioning during the period at issue. Tr. 36. This was a valid reason to reject Dr. Brusek's opinion and is supported by substantial evidence. *See Carmickle*, 533 F.3d at 1165. ("[m]edical opinions that predate the alleged onset of disability are of limited relevance."); *Johnson v. Shalala,* 60 F.3d 1428, 1432 (9th Cir.1995) (An ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" during the relevant time period.). Dr. Brusek's opinion was rendered six years before the alleged onset date of Mr. Jones' disability. 1442-1451. Moreover, there is evidence Mr. Jones returned to his past work as a dump truck driver subsequent to Dr. Brusek's opinion and prior to his alleged disability onset date. Tr. 65-66.

Mr. Jones also points to Dr. Settle's opinion indicating he had a variety of medical conditions including "multilevel cervical spondylosis with spinal canal stenosis at C3-C4, left carpal tunnel syndrome, left ulnar entrapment across the elbow, status post left total knee replacement, lumbar degenerative spondylosis, and depression secondary to chronic pain." Dkt. 10 at 7; Tr. 1763. Mr. Jones contends the ALJ failed to discuss Dr. Settle's diagnoses of chronic pain and left carpal tunnel syndrome. *Id.* However, the ALJ did discuss Mr. Jones' left carpal tunnel syndrome and specifically found it to be a non-severe impairment. Tr. 19. Mr. Jones does not challenge this finding. Moreover, Dr. Settle mentions chronic pain in the context of Mr. Jones' various other impairments, which the ALJ does discuss. Tr. 1763. Mr. Jones fails to explain how error resulted from the ALJ's failure to consider chronic pain as a separate impairment rather than an alleged symptom. Mr. Jones fails to identify evidence indicating that the diagnosis of chronic pain produced pain or symptoms independent of or different from those discussed by the ALJ with respect to his other various impairments. The ALJ thoroughly

discusses Mr. Jones allegations of pain throughout the decision and properly discounted Mr. Jones' symptom testimony. Tr. 14-40. Even if the ALJ should have listed chronic pain as a separate impairment, his consideration of Mr. Jones' pain symptoms in evaluating his symptom testimony and the RFC renders that error harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that an ALJ's failure to list an impairment as severe at step two is harmless error where limitations caused by that impairment were considered at step four).

Mr. Jones also points to Dr. Judish's observation of weakness in his arms and legs as evidence that he is incapable of medium work. Dkt. 14 at 7; Tr. 2224. However, Dr. Judish did not assess any specific functional limitations correlated with this observation. *See* Social Security Ruling 96-8p, 1996 WL 374184, *7 (Jul. 2, 1996) ("[t]he ALJ must consider all medical opinion evidence" and "[i]f the RFC assessment *conflicts* with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.") (emphasis added); Tr. 33, 512, 561, 630, 874, 1763, 2358. Mr. Jones' translation of Dr. Judish's observation at best represents an alternative interpretation of the evidence but fails to establish the ALJ's interpretation is unreasonable.

## C. Malingering

Mr. Jones contends the ALJ committed an error of law by accepting a diagnosis of malingering from a treatment provider who is not an acceptable source, and including it as a severe impairment at step two. Dkt. 10 at 7-8.

It is unclear why the ALJ included malingering as a severe impairment at step two. "The essential feature of malingering is the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or

obtaining drugs." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-5"), at 726 (5th ed. 2013). By its terms, malingering would seem to be the opposite of a severe impairment, which is defined as a medically determinable impairment which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).[6] However, even if the ALJ mistakenly included malingering as a severe impairment at step two, there is significant evidence of malingering in the record which the ALJ was entitled to consider in evaluating Mr. Jones' symptom testimony and the medical evidence.

Only affirmative evidence of malingering is required for the ALJ to discount a claimant's symptom testimony. *See, e.g., Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010) ("[T]he ALJ pointed to affirmative evidence of malingering, including that Berry reported that he wanted to do volunteer work but refrained for fear of impacting his disability benefits...."); *see Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (ALJ properly considered evidence of exaggeration of pain to receive pain medication in credibility assessment). Here, the ALJ pointed to substantial affirmative evidence of malingering including: statements by Matthew A. Radel, PAC, that Mr. Jones' medical record suggests malingering type behavior and that his behavior during the visit suggested more of a malingering etiology and narcotic abuse potential[7]; significant manipulative narcotic and benzodiazepine seeking behavior throughout the record, including numerous ER visits for various accidents and ailments resulting in unremarkable physical examination findings, as well as multiple accounts of having simultaneous pain

---

[6] The Court notes that the DSM-5 does not consider malingering a mental disorder. DSM-5 at 715. Rather, malinger is categorized as an "other condition" that "may be a focus of clinical attention or that may otherwise affect the diagnosis, course, prognosis, or treatment of a patient's mental disorder." *Id.*
[7] The Court notes that other acceptable medical sources also noted malingering behavior. For instance, Leah F. Roberts, M.D. noted that "[g]iven that the patient repeatedly requests pain medication and his exam is very limited by effort, I feel that there is an element of malingering here." Tr. 2685-2686.

medication prescriptions with different providers; characterizations by several providers of Mr.

Jones as being heavily addicted to pain medication and engaging in manipulative drug seeking

behavior; and Mr. Jones' own acknowledgment during the hearing that he has fabricated injuries

in order to obtain pain medication.  Tr. 33, 90.  The ALJ reasonably concluded that "this

evidence strongly undermines Mr. Jones' subjective complaints and greatly suggests that he

exaggerates his complaints and limitations to obtain pain medication." Tr. 33.  Mr. Jones fails to

establish the ALJ harmfully erred in finding affirmative evidence of malingering and drug

seeking behavior and considering such evidence in evaluating Mr. Jones' subjective symptom

testimony and the medical evidence.  However, because this matter must be remanded to

reevaluate Dr. Staker's opinion, on remand the ALJ should also clarify her finding with respect

to malingering.

**D.    Lay Witness Statements**

Mr. Jones contends the ALJ erred in evaluating the lay witness statements.  Dkt. 10 at 8-

11.  The Court disagrees.

To discount competent lay witness testimony, the ALJ "must give reasons that are

germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  Where the ALJ

provides clear and convincing reasons for rejecting a claimant's subjective complaints, the same

reasons may be considered germane for rejecting similar lay witness testimony.  *See Valentine v.

Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

In October 2011, Mr. Jones' mother, Yvonne Stark, step-father, Earl Stark, and sister,

Carrie Marshall, submitted lay witness statements.  Tr. 416-423.  Ms. Stark indicated that at 76

years old she is able to move around better than Mr. Jones, that he is unable to work, that his

health condition is worsening, and that he is in constant pain.  Tr. 416.  Mr. Stark stated that Mr.

Jones has problems with his back, knee, hamstring, shoulder, and arm and that his health had been deteriorating the past couple of years. Tr. 419. Ms. Marshall stated that Mr. Jones' prior sports injuries have had a significant effect on his aging body, that his condition was deteriorating, and he was usually in pain and had problems performing activities requiring duration such as hunting. Tr. 423. The ALJ reasonably discounted the lay witness opinions as inconsistent with Mr. Jones' ability to engage in strenuous activities. Tr. 38. There are numerous references in the record, spanning from 2008 through 2013, to Mr. Jones engaging in activities such as climbing ladders, construction work-like activity, painting his house, hanging Christmas lights, playing baseball, hunting, golfing, lifting a 100 pound elk, lifting a tire and loading a Harley Davidson into a trailer. Tr. 34, 491, 496, 503, 531, 561, 782, 793, 830, 860, 874, 976, 1021, 1101, 1280, 1571, 1593, 1596, 1601, 1604, 2356, 2389, 2044, 2554, 2556. The ALJ reasonably found these activities inconsistent with the lay witness statements regarding Mr. Jones' physical condition and abilities.

The ALJ did not err in discounting the lay witness statements.

**E. Medical Records Related to COPD**

Mr. Jones contends the ALJ erred in failing to discuss relevant medical records relative to his severe impairment of COPD. Dkt. 10 at 11-13. The Court disagrees.

Mr. Jones first points out that, at the hearing, the ALJ declined to obtain pulmonology records because Mr. Jones did not start seeing a pulmonologist until 2013. Dkt. 10 at 11; Tr. 105, 107. Mr. Jones contends this was error because the ALJ has a duty to develop the record and the records were relevant because he is seeking both DIB and SSI benefits. Dkt. 10 at 11-13. However, even if this initial refusal by the ALJ to obtain these records was erroneous, Mr. Jones concedes that pulmonary records from James R. Taylor, M.D. did ultimately come into the

1    exhibit file.  *Id.*  Accordingly, Mr. Jones fails to establish the ALJ harmfully erred in failing to

2    develop the record.

3          Mr. Jones contends the ALJ erred in failing to discuss the records related to Mr. Jones'

4    COPD.  Dkt. 10 at 11-13.  Specifically, Mr. Jones argues that the results of a breathing test

5    indicate he could meet or equal a listing level impairment.  *Id.*; Tr. 2504.  Contrary to Mr. Jones'

6    assertion, the ALJ did consider and discuss this breathing test and found that "the severity of the

7    claimant's physical impairments, considered individually and in combination does not meet or

8    medically equal listing 3.02.  The medical record does not establish evidence of the requisite

9    FEV1 levels to meet or medically equal the listing."  Tr. 22.  Substantial evidence supports this

10   finding.  Mr. Jones' FEV1 level of 2.12 liters is not less than or equal to the 1.85 level required

11   to meet the listing; his FVC level of 5.05 liters is not less than or equal to the 2.30 level required

12   to meet the listing; and, his DLCO level of 21.27 is not less than or equal to the 12.0 level

13   required to meet the listing.  Tr. 2504; 20 C.F.R. Part 404, Subpart P. Appendix 1.

14         Mr. Jones also argues the ALJ erred in failing to discuss Dr. Taylor's assessment that he

15   had moderately severe COPD with features of emphysema and chronic bronchitis and that his

16   emphysema represented permanent damage that could not be reversed.  Dkt. 10 at 11-13; Tr.

17   2505.  However, the ALJ included COPD as a severe impairment and Dr. Taylor does not assess

18   any specific functional limitations caused by Mr. Jones' COPD.  Tr. 2505.  As such, the Court

19   cannot conclude the ALJ harmfully erred in failing to specifically discuss Dr. Taylor's finding of

20   moderately severe COPD.  *See* SSR 96-8p, 1996 WL 374184, *7 (Jul. 2, 1996) ("[t]he ALJ must

21   consider all medical opinion evidence" and "[i]f the RFC assessment *conflicts* with an opinion

22   from a medical source, the adjudicator must explain why the opinion was not adopted.")

23   (emphasis added).  Moreover, the ALJ noted that the RFC "does not contain any limitations

related to COPD/emphysema because the medical evidence shows that [Mr. Jones'] symptoms respond well to medication." Tr. 34. Mr. Jones does not challenge this finding and, based on the record, the Court cannot say it was unreasonable. Tr. 34, 2435, 2447.

**F.     Step Two**

Mr. Jones contends the ALJ harmfully erred at step two in failing to consider his stroke and the resulting symptoms and limitations. Dkt. 10 at 2. The Court disagrees.

At step two of the sequential evaluation, the Commissioner must determine "whether the claimant has a medically severe impairment or combination of impairments." *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 404.1520(a)(4)(ii). The claimant has the burden to show that (1) he has a medically determinable physical or mental impairment, and (2) the medically determinable impairment is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). Thus, a medically determinable impairment must be established by objective medical evidence from an acceptable medical source. 20 C.F.R. § 404.1521. "'Regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings[.]'" *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting SSR 96-4p).

In addition to producing evidence of a medically determinable physical or mental impairment, the claimant bears the burden at step two of establishing that the impairment or impairments is "severe." *See Bowen*, 482 U.S. at 146. An impairment or combination of

impairments is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c). "The step two inquiry is a de minimus screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. An impairment or combination of impairments may be found "'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Id.* (citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)). However, the claimant has the burden of proving his "impairments or their symptoms affect [his] ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001).

Here, the ALJ notes that Mr. Jones "reported to different providers that he had a stroke," but "there are no objective findings in the record to support this claim." Tr. 35. Substantial evidence supports this finding. Mr. Jones points to emergency records from April 1, 2012 noting an admitting diagnosis of acute CVA i.e. stroke. Dkt. 10 at 13; Tr. 2338, 2407, 2587. Mr. Jones notes that the records indicate that weakness was noted in the right side of the face, arm and leg, that his NIH stroke scale was assessed, minor paralysis of the face was noted as was drift of the right arm and right leg, limb ataxia, mild sensory loss and an abnormal ECG. Dkt. 15 at 7; Tr. 2703-04, 2706, 2707. Mr. Jones also notes that he attended physical therapy for upper extremity weakness. Dkt. 10 at 13; Tr. 2764, 2766-67, 2769-70. However, the record also shows that Mr. Jones returned to the ER on April 19, 2012 alleging similar symptoms. Tr. 2685-2686. Based on examination and review of records, Leah F. Roberts, M.D. opined that:

> Review of the patient['s] medical records from [the April 1, 2012] visit reveals that the patient had completely negative imaging of his neural axis including a CT head performed on April 1, 2012 that revealed no intracranial hemorrhage or mass. … MRI revealed no acute infarction and normal intracranial and neck MRA results. .. Given the fact that he has normal imaging with symptoms greater than 2 weeks duration, I do not feel that he has had a stroke. Given that the patient repeatedly requests pain medication and his exam is very limited by effort, I feel

> that there is an element of malingering here. The patient was seen by both the technician and staff to ambulate with normal gait, with absolutely no focal weakness whatsoever to both the bathroom and to the CAT scan table. On his neurologic exam, the patient does have weakness in both legs where he essentially has very little effort to hold the legs off the bed during the neurologic exam. He also has drift in both upper extremities when asked to hold them up, but again this appears to be effort based. Given that the symptoms have been ongoing for 2 weeks, and that he has a negative head CT, I do not feel that the patient has had a stroke. I also do not see convincing evidence that the patient has true weakness consistent with demyelinating syndrome.

Tr. 2685-2686.

The Court also notes that, although the record shows Mr. Jones attended occupational therapy for impaired upper extremity function, the treatment notes indicate that his "R UE function is inconsistent; he reports he can't move it into supination or open his hand voluntarily, but then he does spontaneously" and that "medical workup failed to find evidence of brain infarction." Tr. 2766, 2769. Based on this record, the ALJ reasonably concluded that objective findings did not support Mr. Jones' contention that he had had a stroke. An individual's symptoms will not be found to affect the ability to perform work-related activities unless medical signs or laboratory findings show a medically determinable impairment is present. SSR 96-7p, *available at* 1996 WL 374186; SSR 16-3p; *Ukolov*, 420 F.3d at 1005. Under the circumstances, the ALJ reasonably concluded that Mr. Jones' alleged stroke was not a medically determinable severe impairment.

## VIII.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate the opinions of Dr. Staker to the extent provided above, clarify the finding with respect to malingering, reassess and re-determine the RFC, and

reevaluate steps four and five with the assistance of vocational expert testimony as necessary. The Court notes that the ALJ's harmful error with respect to Dr. Staker's opinions may not apply equally to both Mr. Jones' claims for DIB and SSI as there are different time periods at issue. However, the ALJ did not make a separate finding on this issue, nor was it specifically briefed by the parties.  Accordingly, the Court does not resolve this question but, to the extent necessary, the ALJ is directed to consider this issue in reevaluating the evidence on remand.

DATED this 23 day of August 2017.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE